**SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,**

v.

**CASPER ROGERS & CO., Inc., Casper
A. Rogers, Defendants.**

United States District Court
S. D. New York.

May 15, 1961.

William D. Moran, Associate Regional
Adm'r, New York City, George L. Mahr,
Atty., S. E. C., New York City, for Securities and Exchange Commission.

Javits & Javits, New York City, for
defendants. Benjamin A. Javits, Eric M.
Javits, Thomas Field, New York City,
of counsel.

CASHIN, District Judge.

This is a motion brought on by an order to show cause for a preliminary injunction pending final determination of
this action. Plaintiff seeks to enjoin the
defendants from using any instrumentalities of interstate commerce to engage in
the securities business as a registered
broker-dealer unless it complies with the
Commission's net capital and bookkeeping rules. Specifically, defendants are
charged with violating Section 15(c) (3)
of the Securities Exchange Act of 1934
(15 U.S.C.A. § 78o(c) (3) ) and Rule
15c3–1(17 C.F.R. § 240.15c3–1) promulgated thereunder, which states that—

> "No broker or dealer shall permit
> his aggregate indebtedness to all
> other persons to exceed 2,000 percent
> of his net capital."

and Section 17(a) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78q
(a) and Rule 17a–3 (17 C.F.R. § 240.17a–
3) promulgated thereunder, which states
that defendants shall make and keep
current certain books and records.

The defendant corporation, Casper
Rogers and Co., Inc., is a broker-dealer
registered with the Securities and Exchange Commission, and Casper A. Rogers is President, Treasurer, Director and
beneficial owner of 10% or more of its
common stock. Casper A. Rogers was
sole proprietor of Casper Rogers Co., the
predecessor of the defendant corporation
and a firm registered with the plaintiff
Commission since January 14, 1955.

On March 28, 1961 the defendant, Casper Rogers and Co., Inc., submitted a financial statement as of February 28, 1961 to the Commission, pursuant to its request. It showed that the defendant needed an additional $121,529 in order not to exceed the 2,000 percent limitation on the ratio of its aggregate indebtedness to its adjusted net capital as required by the rule. It was further shown that the defendant corporation's books of account were not being maintained in conformity with the requirements of Rule 17a–3 in that they were not currently posted as of March 30, 1961, i. e., that the general ledger was not posted beyond March 21, 1961, the customers' ledger beyond March 17, 1961, the firm trading account ledger beyond February 28, 1961, and the stock record beyond January 31, 1961.

The motion was argued on April 18, 1961, at which time defendants argued that all the violations had been cured and that the violations were due entirely to nonrecurrent circumstances, and that no future violations will occur. At that time I adjourned the motion for one week and directed the Commission to recheck the books of defendant. This examination took place on the same day, April 18, 1961, and the Commission found that the general ledger was not posted beyond April 13, 1961, the customers' ledger beyond April 10, 1961, the firm trading account ledger beyond April 12, 1961, and the stock record beyond April 11, 1961. Because of this it was impossible to determine whether or not the defendant corporation was in compliance with the net capital rule and a request was made by the Commission for a trial balance as of April 18, 1961, together with supporting schedules necessary to determine defendant's capital position by April 21, 1961. It appears from the papers before me that on April 18, 1961 defendant had an excess of "net capital" which entitled it to incur about $3,000,000 in additional indebtedness over and above the then existing indebtedness. Moreover, it appears that on April 13, 1961, which was only two business days prior to the Commission's examination on the 18th, that the defendant had an excess of "net capital" which would have supported more than $1,000,000 in additional indebtedness over and above defendant's actual indebtedness on that date.

Plaintiff argues that "the defendants not only have exercised a disregard for the Commission's regulations in that prior violations of these rules have been of a recurrent nature, but more important the corporate defendant has been allowed to continue in business since mid-December 1960, even though at no time have its books and records been in a condition which would permit anyone to be aware of the firm's capital position on a day-to-day basis." Affidavit of George L. Mahr, April 6, 1961.

Defendants oppose the motion on the grounds that, while they did violate the net capital rule, it is an extremely technical rule and the violation was cured as soon as it was brought to defendants' attention. Moreover, the defendants claim that this violation had nothing to do with the solvency of the defendant which appears to be in excellent financial condition. As to violations of the bookkeeping rule, the defendants claim those were due entirely to nonrecurring circumstances and now that they have caught up with the backlog there will be no future violations.

The nonrecurring circumstances which defendant Casper A. Rogers sets forth in his affidavit of April 17, 1961 arise out of defendants' attempts to cope with the increased activity in the stock market. New office premises (four times larger than the old) were acquired for occupancy on October 1, 1960. However, the landlord could not make the premises available until January 9, 1961. Two new bookkeeping machines were ordered but delivery was delayed until the end of January 1961. The defendants employed five persons to maintain the records before acquiring the larger premises, at which time a great many more were employed in an effort to get the books up to date. These new people were employed before any inquiries what-

soever by the Commission, and defendants' bookkeeping employees' payroll jumped from $5,826.11 for January, February and March 1960 to $19,027.54 for the same period in 1961. There was also the customary disruption of office routine in moving from one office to another, and a further amount of bookkeeping became necessary when in January Messrs. Leo and Zelig Nathanson acquired 50% of the common stock of defendant corporation.

Thus, defendants' position is that no violations now exist of either rule, and none will occur in the future. Defendant contends that "The records are completely up to date. With the present personnel and machines, the Corporation's records now current could and will be kept current with ease for the future even if the Corporation were to do a volume of business 50% heavier than it is actually doing, * * *." Affidavit of Casper A. Rogers, April 17, 1961. As to the violation of the net capital rule, defendants claim that it is an extremely technical rule, the violation was completely non-wilful and that had any director or officer of the defendant corporation been aware of it, it never would have occurred.

The issuance of an injunction under the Securities Exchange Act is governed by Section 21(e), 15 U.S.C. § 78u(e), which conditions the right upon sufficient proof that " * * * any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation * * * " of the statute or any rule prescribed under the statute. There appears to be no present violation of the net capital rule and while the Commission asserts that there is a violation of their bookkeeping rule the defendants deny it. However, even if the Commission is correct in its assertion, the defendant is, at most, two business days behind in its records. It does not seem to me that this is a sufficient showing to justify the issuance of a preliminary injunction.

■■ Plaintiff contends that in view of past violations by defendants it is reasonable to believe that a repetition of the violations will occur. Past violations are not, in themselves, grounds for an injunction but can be taken into consideration. In light of the fact that the defendant corporation has cured the violation of the net capital rule, is not in any danger of going insolvent, and has expended considerable money to see that the bookkeeping rules will be adhered to, I deny plaintiff's motion for a preliminary injunction.

It must be remembered that the granting of a preliminary injunction is a drastic remedy especially in the securities field. In light of the circumstances set forth above, and in light of the fact that the investing public's rights do not seem to be in danger, I see no justification for the issuance of a preliminary injunction at this time.

Plaintiff's motion is denied.

It is so ordered.